# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **JEFFREY ALONZO SIMMS**, | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | )    Civ. Act. No. 05-593-SLR |
| | ) |
| **THOMAS L. CARROLL**, Warden, | ) |
| and **CARL C. DANBERG**, Attorney | ) |
| General of the State of Delaware, | ) |
| | ) |
| Respondents | ) |

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, respondents[1] submit the following in response to the petition for a writ of habeas corpus:

1. The grand jury indicted Jeffrey Simms in August 2002, charging him with second degree burglary, third degree assault, endangering the welfare of a child, and criminal mischief. The charges stemmed from Simms' entry on July 22, 2002 into the house of his former girlfriend, Martha Reid, and his ensuing assault of Reid. A Superior Court jury in February 2003 convicted Simms of second degree burglary, offensive touching (as a lesser included offense of third degree assault), endangering the welfare of a child, and criminal mischief. Simms was sentenced to eight years imprisonment on the burglary conviction and to a total of an additional 14 months imprisonment, suspended for 14 months probation, on the other three convictions. Simms' convictions and sentence were affirmed on appeal. *Simms v. State*, No. 206, 2003 (Del. Oct. 8, 2003).

---

[1]Carl C. Danberg succeeded M. Jane Brady as Attorney General on December 8, 2005. He is accordingly substituted for her under Civil Rule 25(d)(1).

2. In contrast to the liberal pleading requirements of most civil actions, federal "habeas corpus petitions must meet heightened pleading requirements. . . ." *McFarland v. Scott*, 512 U.S. 849, 856 (1994). Habeas Rule 2(c), in turn, requires the petitioner to state all grounds for relief available to him and to set out in summary fashion the facts underlying each claim for relief. Simms has now applied for federal habeas relief. DI 2, 7. The problem with Simms' application is that he does not specify any grounds for relief. Similarly, Simms does not articulate any facts from which prosecutors could infer the nature of any legal challenge being made by him. Simms' petition thus fails to comply with the requirements of Rule 2(c). *See, e.g, Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990); *Mayberry v. Petsock*, 821 F.2d 179, 185-86 (3d Cir. 1987). "[Simms] cannot merely allege that he is illegally detained and, without more, require his custodian to prove the legality of his confinement." *Stewart v. Smyth*, 288 F.2d 362, 363 (4th Cir. 1961). Given Simms' failure to allege any claim for relief, his application should accordingly be dismissed. *Hawkins v. Carroll*, 2005 WL 3336538, at *10 (D. Del. Dec. 8, 2005) (citing *Biggins v. Carroll*, 2002 WL 31094810, at *5 (D. Del. Sept. 13, 2002)); *DeShields v. Snyder*, 830 F.Supp. 819, 823-24 (D. Del. 1993) (habeas court can not speculate about claims, but may only consider claims that are clearly presented in petition).

3. On the basis of the Superior Court docket, it appears that the trial proceedings were recorded, but no transcript has been prepared; the transcript of Simms' sentencing has been prepared. In the event that the Court directs the production of any transcript of the state court proceedings, respondents reasonably anticipate that such transcript could be produced within 90 days of any order by the Court.

4.  The petition should accordingly be dismissed without further proceedings.

/s/ **LOREN C. MEYERS**
Loren C. Meyers
Chief of Appeals Division
Del. Bar ID 2210
loren.meyers@state.de.us
Department of Justice
820 N. French Street
Wilmington, DE  19801
(302) 577-8500

January 17, 2006



Slip Copy                                                                                                Page 1

Slip Copy, 2005 WL 3336538 (D.Del.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
William J. HAWKINS, Petitioner,
v.
Thomas CARROLL, Warden, Respondent.
**No. Civ.A. 03-1165-KAJ.**

Dec. 8, 2005.

William J. Hawkins, Petitioner, pro se.
Thomas E. Brown, Deputy Attorney General,
Delaware Department of Justice, Wilmington,
Delaware, for Respondent.

MEMORANDUM OPINION

JORDAN, J.

### I. INTRODUCTION

*1 Petitioner William J. Hawkins ("Hawkins") is incarcerated at the Delaware Correctional Center in Smyrna, Delaware. Before me is Hawkins' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I.2.) For the reasons that follow, I will dismiss his petition.

### II. FACTUAL AND PROCEDURAL BACKGROUND

As adduced at trial and detailed by the Delaware Supreme Court on direct appeal, the facts of Hawkins' case are as follows:
On November 5, 1999, Hawkins was arrested for beating his then-roommate, Lilliana Mayfield, with a crowbar during an argument. Ms. Mayfield also alleged that after the assault, Hawkins blocked the door and refused to let her leave the garage in which they were living. When Ms. Mayfield was finally able to escape, she went to the hospital and

learned that two of her ribs were fractured. The following day, Ms. Mayfield's left lung collapsed as a result of her injuries. Hawkins was indicted on one count of first degree assault, one count of second degree unlawful imprisonment, and possession of a deadly weapon during the commission of a felony. Although trial was initially scheduled for March 20, 2000, the State requested a continuance because it had been unable to secure the appearance of Lilliana Mayfield. Ms. Mayfield was homeless at the time, and locating her proved difficult. After Ms. Mayfield again failed to appear on March 21, 2000, the trial court rescheduled the matter for March 27, 2000, at which time the trial proceeded as scheduled. [Mayfield appeared on the rescheduled trial date and testified as the first witness.]
At trial, during its case-in-chief, the State called Lawrence Demby, an alleged eyewitness to the crime. Demby proved to be a problematic witness because of his inconsistent prior statements. At one point, Demby even claimed not to have been present at all. (Ms. Mayfield consistently testified that Demby was, in fact, present in the garage at the time of the assault.) Once on the witness stand, Demby testified that, although he had originally told both defense counsel and the State that Ms. Mayfield was the aggressor in the altercation, he did so only because Hawkins had pressured him to lie. Following this direct testimony and cross-examination by the defense, the State asked Demby on redirect whether defense counsel had told him that he planned to call him as a witness. Defense counsel objected and the court restricted any further questioning by the State in this area but gave no curative instruction.

*Hawkins v. State,* 792 A.2d 189 (Table), 2002 WL 384436, at *1 (Del. Mar. 6, 2002).

At the conclusion of that trial, in March 2000, the Superior Court jury convicted Hawkins of second degree assault, second degree unlawful imprisonment, and possession of a deadly weapon

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                    Page 2

Slip Copy, 2005 WL 3336538 (D.Del.)
**(Cite as: Slip Copy)**

during the commission of a felony. The Superior Court sentenced Hawkins as an habitual offender pursuant to 11 DEL. C. ANN. § 4214(a), imposing an aggregate term of thirty (30) years incarceration. *Id.* Hawkins appealed, and the Delaware Supreme Court affirmed the Superior Court's decision. *Id.*

*2 In October 2002, Hawkins filed a *pro se* motion in the Delaware Superior Court for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). His Rule 61 motion asserted five allegations regarding his trial counsel's ineffective assistance, and a claim that his grand jury indictment was defective. *See Hawkins v. State,* 839 A.2d 666 (Table), 2003 WL 22957025, at *1 (Del. Dec. 10, 2003). The Rule 61 motion was referred to a Superior Court Commissioner, who issued a Report and Recommendation concluding that the Rule 61 motion should be dismissed because the claims were either procedurally barred under Rule 61(i)(3) or without merit. The Superior Court adopted the Commissioner's Report and Recommendation and denied Hawkins' Rule 61 motion. *Id.*

Hawkins appealed to the Delaware Supreme Court, raising the same claims he presented in his Rule 61 motion, as well as two new claims: (1) his attorney coerced him into not testifying; and (2) the Superior Court should have conducted an evidentiary hearing on his ineffective assistance of counsel claims. *Id.* The Delaware Supreme Court denied the two new claims as meritless, and affirmed the Superior Court's decision with respect to the other claims. *Id* .

In December 2003, Hawkins filed in this Court a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I.2.) The State filed an Answer, asking the Court to dismiss the petition. (D.I.13.) Hawkins filed a Traverse. (D.I.23.)

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional circumstances, a state prisoner must exhaust remedies available in the state courts before seeking habeas relief from a federal court. 28 U.S.C. § 2254(b), (c); *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000). The exhaustion requirement is grounded on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts,* 228 F.3d at 192. To satisfy the exhaustion requirement, a state prisoner must demonstrate that he invoked "one complete round of the State's established appellate review process" by fairly presenting the claim the to the state's highest court, either on direct appeal or in a post-conviction proceeding. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999); *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997); *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D.Del. Dec. 22, 2000).

### B. Standard of Review Under AEDPA

If a federal habeas claim is exhausted and the state court adjudicated the claim on the merits, then the federal habeas court can grant habeas relief when the state court's adjudication:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
*3 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir.2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn,* 355 F.3d 233, 247 (3d Cir.2004)(internal citations omitted), *rev'd on other grounds,*-U.S.-, 125 S.Ct. 2456 (2005).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3

Slip Copy, 2005 WL 3336538 (D.Del.)
**(Cite as: Slip Copy)**

AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000).

### IV. DISCUSSION

Hawkins asserts eight claims in his habeas petition: (1) the trial court committed plain error by admitting prior bad act evidence in contravention of *Getz v. State,* 538 A.2d 726, 734 (Del.1988); (2) the prosecutor's questioning of the State's witness Larry Demby implied that the defense had an obligation to call witnesses, and therefore, constituted an impermissible comment on Hawkins' right not to testify; (3) the trial court should have granted Hawkins' motion under Superior Court Criminal Rule 48(b) alleging unnecessary prosecutorial delay in bringing his case to trial; (4) the trial court committed reversible error by not declaring Delaware's habitual offender statute unconstitutional or, alternatively, for sentencing him as an habitual offender; (5) his trial counsel provided ineffective assistance for failing to object to hearsay testimony and inadmissible documents, failing to interview or subpoena witnesses at the defendant's request, failing to object to a state witness's testimony and failing to request a *Getz* analysis of that testimony, and failing to ask for a jury instruction on self-defense; (6) unspecified procedures failed to meet the standards set forth in " Federal Rule (6) and the Fifth Amendment"; (7) someone, presumably the trial court, "abused [sic] of discretion" in an unspecified way; and (8) again someone, presumably the trial court, "abused [sic] of discretion" in an unspecified way. (D.I.2.)

As nearly as I can tell, Hawkins presented these claims [FN1] to the Delaware Supreme Court on direct appeal or on post-conviction appea, and, thus, he has exhausted state remedies.

> FN1. Using the identical language, Hawkins presented his "abused [sic] of discretion" claims to the Delaware Superior Court in his Rule 61 motion, and again on post-conviction appeal. (D.I. 15, *State v. Hawkins,* IK99-11-0375, 0376 & IK99-12-0227, Comm. Rep. & Rec. at 4 (Del.Super. Ct. June 18, 2003); Appellant's Opening Br. at 14 in *Hawkins v. State,* No. 358,2003).)

A. State Law Claims: Claims One, Three, and Six

*4 A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Claims based on errors of state law are not cognizable on federal habeas review, and a federal habeas court cannot re-examine state court determinations on state law issues. *Estelle v. McGuire,* 502 U.S. 62, 67-8 (1991); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

In Claim One, Hawkins alleges that the Superior Court committed plain error in admitting prior bad act evidence in contravention of *Getz v. Snyder,* 538 A.2d. 726, 734 (Del.1988). This claim asserts a violation of state evidentiary law, and is not cognizable in a federal habeas proceeding. *See, e.g., McLaughlin v. Carroll,* 270 F.Supp.2d 490, 514 (D.Del.2003); *Bright v. Snyder,* 218 F.Supp.2d 573 (D.Del. Aug. 12, 2002).

In Claim Three, Hawkins contends that the trial court abused its discretion by not granting his motion asserted under Superior Court Criminal Rule 48(b). Delaware's Rule 48 is derived from Federal Rule of Criminal Procedure 48(b) and provides, in relevant part, that "[i]f there is unnecessary delay in ... bringing a defendant to trial, the court may dismiss the indictment, information or complaint." Del.Super. Ct.Crim. R. 48(b); *State v. Fischer,* 285 A.2d 417, 418-19 n. 3 (Del.1971); *State v. McElroy,* 561 A.2d 154, 156 (Del.1989).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                        Page 4

Slip Copy, 2005 WL 3336538 (D.Del.)
**(Cite as: Slip Copy)**

Although perhaps facially similar to a speedy trial claim, Delaware courts have held that Rule 48(b) motions "serve a broader purpose [than the constitutional limitations of the Sixth Amendment] and [are] not governed by established concepts of the speedy trial clause." *Hughey v. State,* 522 A.2d 335, 340 (Del.1987)(citing cases); *State v. McElroy,* 561 A.2d 154, 156 n .2 (Del.1989) (finding that " there are instances of dismissal [under Rule 48(b) ] involving no denial of constitutional rights.") (citing 8B *Moore's Federal Practice,* ¶ 48.03[1] at 48-16 (2d Ed.)). Delaware's Rule 48(b) is a "codification of the inherent power of a court to dismiss a case for want of prosecution," and Delaware courts engage in two entirely separate analyses for Rule 48(b) motions and speedy trial claims. *Fischer,* 285 A.2d at 418-19 n. 3; *McElroy,* 561 A.2d at 156; *see, e.g., Vanlier v. State,* 813 A.2d 1142 (Table), 2002 WL 31883016, at * *2-3 (Del.2002); *State v. Lewis,* 2002 WL 1335304, at *10-13 (Del.Super. Ct. June 17, 2002).

Hawkins presented his Rule 48(b) motion to the state courts as a state law claim without any reference to his speedy trial rights under the Sixth Amendment. In fact, he cited to Delaware Supreme Court opinions that discuss the difference between Rule 48(b) motions and speedy trial claims. [FN2] Further, the Delaware state courts did not analyze Hawkins' claim in terms of a speedy trial violation. In these circumstances, I conclude that Hawkins' Rule 48(b) claim asserts a state law issue that fails to provide a proper basis for federal habeas review

> FN2. Hawkins cited to *State v. McElroy,* 561 A.2d 154 (1989) and *State v. Harris,* 616 A.2d 288 (1992).

**\*5** Finally, in his sixth claim, Hawkins alleges that the charges filed against him violated "Federal Rule 6 and the Fifth Amendment." Reading this claim in conjunction with his state court filings, Hawkins appears to contend that the Superior Court did not have jurisdiction to convict him because the grand jury indictment did not contain signatures from all the grand jurors. There is no Fifth Amendment right to indictment by a grand jury in state court criminal proceedings. *Albright v. Oliver,* 510 U.S. 266

(1994). Consequently, any defect in a state grand jury process does not allege a ground for federal habeas review unless it "rise[s] for some other reason to the level of a denial of rights protected by the United States Constitution." *Wainwright v. Goode,* 464 U.S. 78, 86 (1983). The absence of grand juror signatures on an indictment is "a mere technical irregularity that is not necessarily fatal to the indictment." *United States v. Titchell,* 261 F.3d 348, 351 (3d Cir.2001) (quoting *Hobby v. United States,* 468 U.S. 339, 345 (1984)).

Here, Hawkins has failed to demonstrate how the alleged lack of grand juror signatures on his indictment deprived him of his constitutional rights. Further, because Hawkins' indictment contains the signatures of the grand jury foreperson, the grand jury secretary, the Attorney General, and a Deputy Attorney, it appears to be sufficient under Delaware law. *See* Del.Super. Ct.Crim. R. 6(c) (requiring indictment to be signed by grand jury foreperson), and 7(c)(1) (requiring indictment to be signed by Attorney General).

Accordingly, I will dismiss claims one, three, and six because they fail to assert issues cognizable on federal habeas review.

B. Claim Two: Improper Prosecutorial Questioning

Hawkins' second claim asserts that the prosecutor's question to Demby about whether defense counsel had intended to call him as a witness implicated Hawkins' Fifth Amendment privilege to refrain from testifying. Specifically, Hawkins contends that this question improperly commented on his decision not to testify because it implied that he had an obligation to call witnesses.

The Delaware Supreme Court denied this claim as meritless. Therefore, habeas relief will only be warranted if Delaware Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly settled federal law as established by the United State's Supreme Court.

In *Griffin v. California,* 380 U.S. 609 (1965), the United States Supreme Court held that the Fifth

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5

Slip Copy, 2005 WL 3336538 (D.Del.)
**(Cite as: Slip Copy)**

Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Id.* at 615. The Supreme Court was explained that *Griffin* was "concerned only with *adverse* comment, whether by the prosecution or the trial judge," *Lakeside v. Oregon,* 435 U.S. 333, 338-39 (1978) (emphasis added), and that "[a] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Donnelly v. DeChristoforo,* 416 U.S. 637, 645 (1974).

**\*6** To determine if a prosecutorial remark violates *Griffin,* the remark must be viewed in the context in which it was made. *U.S. v. Robinson,* 485 U.S. 25, 33 (1988). The Third Circuit's "well-established test for determining whether a prosecutor's remark violates *Griffin* is 'whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." ' FN3 *Lesko v. Lehman,* 925 F.2d 1527, 1544 (3d Cir.1991). Specific to the inquiry here, the Third Circuit has held that "it is perfectly proper [for a prosecutor] to comment on the failure of the defense to call a potentially helpful witness ... where ... the comment could not be construed as a comment on the failure of the defendant to testify." *U.S. v. Keller,* 512 F.2d 182, 186 (3d Cir.1975) (citing cases).

> FN3. The Third Circuit permits district courts to view the opinions of other lower federal courts in ascertaining the reasonableness of the state court's application of clearly established Federal law. *See Fischetti v. Johnson,* 384 F.3d 140, 149 (3d Cir.2004).

In the instant situation, Demby appeared as a witness for the prosecution. During his testimony, Demby stated that Hawkins asked him to testify falsely about the fight between Hawkins and Mayfield. On re-direct, the State asked Demby if defense counsel had told him (Demby) that he was

going to be called as a defense witness. The Delaware Supreme Court concluded that this questioning "was proper follow-up questioning concerning the alleged attempt by Hawkins to procure false testimony from Demby. The question of whether the defense had, at any time, intended to call Demby as a witness was relevant to this inquiry. In this context, therefore, the State's question was not improper and the Superior Court acted within its discretion in permitting it." *Hawkins,* 2002 WL 384436, at \*2.

Viewing the prosecutor's comment in context with Demby's testimony, I conclude that the Delaware Supreme Court's decision was not contrary to, or an unreasonable application of, *Griffin* and its progeny. In *Griffin,* the prosecutor explicitly referred to the defendant's failure to testify by stating "[t]hese things he has not seen fit to take the stand to and deny or explain. And in the whole world, if anybody would know, this defendant would know. Essie Mae is dead, she can't tell you her side of the story. The defendant won't." *Griffin,* 380 U.S. at 611. In contrast, the prosecutor in Hawkins' case only questioned Demby's recollection as to whether the defense had ever intended to call him as a witness for their side. This inquiry was likely no more than an effort to show that the defense intended to call Demby as a witness until his potential trial testimony changed. The prosecutor's question was not an adverse comment on Hawkins' failure to testify. Therefore, this claim does not warrant federal habeas relief under § 2254(d)(1).

### C. Claim Four: Constitutionality of Habitual Offender Statute

Hawkins' fourth claim alleges that the Superior Court erred in not declaring Delaware's habitual offender statute (11 DEL. C. ANN . § 4214(a)) unconstitutional or, alternatively, the Superior Court erred in designating him as an habitual offender. Section 4214(a) of the habitual offender statute provides:

**\*7** Any person who has been 3 times convicted of a felony, other than those which are specifically mentioned in subsection (b) of this section, under the laws of this State, and/or any other state, United

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 3336538 (D.Del.)
**(Cite as: Slip Copy)**

States or any territory of the United States, and who shall thereafter be convicted of a subsequent felony of this state is declared to be an habitual criminal, and the court in which such 4th or subsequent conviction is had, in imposing sentence, may in its discretion, impose a sentence of up to life imprisonment upon the person so convicted. Notwithstanding any provision of this title to the contrary, any person sentenced pursuant to this subsection shall receive a minimum sentence which shall not be less than the statutory maximum penalty provided elsewhere in this title for the 4th or subsequent felony which forms the basis of the State's petition to have the person declared to be an habitual criminal ...

11 Del. C. Ann. § 4214(a) (emphasis added). Reading Hawkins' state court filings in conjunction with his habeas petition, he contends that Delaware's habitual criminal statute, as written, does not authorize the State to certify more than one felony as the "fourth" (i.e., qualifying) felony. He argues that when a defendant has committed several felonies that could constitute the fourth or subsequent felony, there are no guidelines governing the State's choice of felonies. Thus, the State can choose the combination that will result in the harshest sentence, and this unfettered discretion violates equal protection, due process, and cruel and unusual punishment because the State can choose different sentences for different defendants. [FN4] In Hawkins' situation, the State listed both the second degree assault and the weapon charges as the " fourth or subsequent felony." Hawkins was sentenced to eight years on the assault charge, and twenty-two years on the weapon offense.

> FN4. The State asserts that this claim should be dismissed because it only alleges a violation of state law. However, because I interpret the claim as alleging selective enforcement in violation of Hawkins' federal constitutional rights, I will not dismiss it as a state law claim.

Hawkins presented this issue to the Delaware Superior Court in a motion to declare the habitual offender statute unconstitutional. The Superior

Court denied the motion on the merits. The Delaware Supreme Court affirmed this decision. Therefore, federal habeas relief will be not be warranted unless the state courts' denial of this claim was either contrary to, or an unreasonable application of, clearly settled federal law as established by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

It is well-settled that a prosecutor can consciously exercise some selectivity in the enforcement of an habitual criminal statute without violating the Constitution "so long as the 'selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." ' *Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978) (citing *Oyler v. Boles,* 368 U.S. 448, 456 (1962).); *Government of Virgin Islands v. David,* 741 F.2d 653, 655-56 (3d Cir.1984). When Hawkins presented this claim to the Superior Court, he did not allege that the State's selection of the felonies for sentencing was based on race or religion. Rather, he argued that his sentence was arbitrarily dependent upon the fourth felony or felonies chosen by the State. Hawkins explained that, if the second degree assault conviction was the fourth felony, then he would have been subject to a sentence for eight years to life. If the possession of a deadly weapon was the fourth felony, then he would have been subject to a sentence of twenty years to life. Finally, if both felonies were listed as the fourth felony, he was subject to a mandatory minimum sentence of twenty-eight years plus two life sentences. (D.I. 15, Appendix to Appellant's Op. Br. in *Hawkins v. State,* No. 411, 2000, at A-189 to A-190.) He also argued that "the ability of one Prosecutor to add years to a Defendant's Sentence by alleging in a Petition more than one Violent Felony, while a different Prosecutor with the same facts can elect not to file a Petition, ... renders the mandatory Level V time a Defendant is to receive 'patently arbitrary,' capricious, and unreasonable and an unconstitutional delegation of authority." (D.I. 15, Appellant's Op. Br. in *Hawkins v. State,* No. 411, 2000, at 34.)

*8 The Delaware Supreme Court rejected this argument, noting that under § 4214(a), after a third felony conviction, a defendant must be sentenced as

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 3336538 (D.Del.)
**(Cite as: Slip Copy)**

an habitual offender on each subsequent felony conviction. *Hawkins,* 2002 WL 384436, at * *2. This decision was neither contrary to, nor an unreasonable application of, clearly established fe deral law. The existence of some prosecutorial discretion does not amount to a constitutional violation, especially when, as here, there is no indication in the record that the state's decision to list both felonies as the fourth felony was based upon an impermissible classification other than the valid exercise of prosecutorial discretion. Accordingly, I will dismiss this claim for failing to satisfy § 2254(d)(1).

### D. Claim Five: Ineffective Assistance of Counsel

Hawkins' fifth claim asserts several instances of ineffective assistance: 1) counsel failed to object to hearsay testimony and inadmissible documents; 2) counsel failed to interview or subpoena witnesses at the defendant's request; 3) counsel failed to object to a state witness's testimony and failed to request a *Getz* analysis of that testimony; and 4) counsel failed to ask for a jury instruction on self-defense. The Delaware Supreme Court denied the claim as meritless. Therefore, I cannot grant federal habeas relief unless the state supreme court's decision was either contrary to, or an unreasonable application, clearly settled federal law established by the United States Supreme Court.

The "clearly established Federal law" which governs ineffective assistance of counsel claims is the standard enunciated by *Strickland v. Washington,* 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith,* 539 U.S. 510 (2003). To prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate both that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) counsel's deficient performance actually prejudiced the petitioner's case, in other words, there is a reasonable probability that, but for counsel's faulty performance, the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 687-88, 692-94; *Marshall v. Hendricks,* 307 F.3d 36, 85 (3d Cir.2002).

*1. Defense counsel's failure to object to hearsay testimony and inadmissible documents.*

Reading Hawkins' claim in conjunction with his state court filings, he appears to contend that the medical records were inadmissible and that an expert witness, Dr. Sam Wilson, should not have been permitted to testify about the victim's medical records because they were prepared by another doctor, Dr. Hamilton Carter. During Hawkins' Rule 61 proceeding, the Superior Court Commissioner concluded that the records were properly admitted under Delaware Rule of Evidence 803(6), and that Dr. Wilson's testimony was admissible because Dr. Wilson had administered emergency surgical treatment to the victim. (D.I. 15, *State v. Hawkins,* ID No. 9911005395, Commissioner's Rep. & Rec., Freud, A. at 10 (Del.Super. Ct. June 18, 2003)). Consequently, even if counsel objected to the testimony and the admission of the medical records, the Superior Court would have found the objections to be meritless. Because defense counsel cannot be ineffective for failing to make meritless objections, Hawkins has failed to demonstrate that defense counsel provided constitutionally ineffective assistance under *Strickland. See Parrish v. Fulcomer,* 150 F.3d 326, 328 (3d cir.1998).

*2. Counsel's failure to interview or subpoena witnesses*

*\*9 Once again, reading Hawkins' instant claim in conjunction with his state court filings, he complains that defense counsel failed to investigate three potential witnesses. Defense counsel, however, sent letters to all the potential witnesses identified by Hawkins, though none of them responded. Defense counsel also hired an investigator, who was unable to locate the witnesses. In the absence of any indication as to what else defense counsel should have done to locate the potential witnesses, the Delaware state courts did not unreasonably apply *Strickland* in denying this claim.

Hawkins also alleges that defense counsel failed to subpoena Officer Nick Berna. According to Hawkins, Officer Berna would have testified that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2005 WL 3336538 (D.Del.)
**(Cite as: Slip Copy)**

Mayfield was intoxicated at the time of the assault. During Hawkins' trial, however, Officer Danny Ranger testified that Mayfield was uncooperative and that Mayfield conceded that she had been drinking beer at the time of the assault. Mayfield's medical records also indicated alcohol use and a lack of cooperation. Thus, because Officer Berna's testimony would only have been cumulative, defense counsel was not ineffective for failing to subpoena him. *See McBride v. Howard,* 1995 WL 617373, at \*5 (D.Del. Oct. 6, 1995).

### 3. Counsel failed to object to witness testimony or request a Getz analysis

Hawkins contends that defense counsel failed to object to witness testimony or request the trial court to perform an analysis under *Getz v. State,* 538 A.2d 726 (Del.1988). [FN5] This claim appears to be based upon Demby's testimony that Hawkins asked him to lie on the witness stand. The Delaware Supreme Court found this claim to be meritless, holding that "Demby's testimony concerning Hawkins' post-crime conduct did not amount to inadmissible propensity evidence. Instead, the evidence was elicited to show consciousness of guilt. " *Hawkins,* 2002 WL 384436, at \* \*1. Defense counsel's failure to make a meritless objection does not constitute ineffective assistance.

> FN5. In *Getz,* the Delaware Supreme Court provided guidance for determining the admissibility of evidence offered under Delaware Rule of Evidence 404(b), which is based upon Federal Rule of Evidence 404(b). *Getz,* 538 A.2d at 734.

### 4. Counsel failed to request a jury instruction on self-defense

Hawkins' final complaint about defense counsel's performance is that he failed to request a jury instruction on self-defense. Hawkins did not testify at trial, thus, the self-defense story was not before the trial court. Further, there was no other evidence that Hawkins' attack on the victim was in self-defense. Under Delaware law and Third Circuit

precedent, a jury instruction on self-defense is only proper when there is an evidentiary basis on which to premise the instruction. *See* 11 DEL. C. ANN. § 303; *Cf. Vujosevic v. Rafferty,* 844 F.2d 1023, 1027 (3d Cir.1988) (due process does not require a jury instruction unless the proposed instruction is supported by the evidence); *Bishop v. Mazurkiewicz,* 634 F.2d 724, 725 (3d cir.1980). Defense counsel did not provide ineffective assistance by failing to request a jury instruction to which Hawkins was not entitled.

**\*10** Accordingly, I conclude that the Delaware state courts did not unreasonably apply *Strickland* in rejecting Hawkins' ineffective assistance of counsel claim.

### D. Claims Seven and Eight: Abused [sic] Discretion

Hawkins' final two claims only assert "abused [sic] discretion." I will dismiss these claims because Hawkins has failed to "state the facts supporting each ground" for relief under Rule 2(c) of the Rules Governing Section 2254 Petitions, 28 U.S.C. foll. § 2254. *See Biggins v. Carroll,* 2002 WL 31094810, at \*5 (D.Del. Sept. 13, 2002).

### V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

I conclude that Hawkins' habeas petition does not warrant federal habeas relief. I do not believe reasonable jurists would find this conclusion to be debatable. Consequently, I will not issue a certificate of appealability.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                          Page 9

Slip Copy, 2005 WL 3336538 (D.Del.)
**(Cite as: Slip Copy)**

### VI. CONCLUSION

For the reasons stated, Hawkin's petition for habeas
relief pursuant to 28 U.S.C. § 2254 is denied. An
appropriate order will follow.

D.Del.,2005.
Hawkins v. Carroll
Slip Copy, 2005 WL 3336538 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03cv01165 (Docket) (Dec. 29, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                     Page 1

Not Reported in F.Supp.2d, 2002 WL 31094810 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
James Arthur BIGGINS, Petitioner,
v.
Thomas L. CARROLL, Warden, and Attorney
General of the State of Delaware, Respondents.
**No. Civ.A. 99-188-GMS.**

Sept. 13, 2002.

James Arthur Biggins, Delaware Correctional
Center, Smyrna, DE, petitioner pro se.
Thomas E. Brown, Department of Justice,
Wilmington, DE, for Thomas L. Carroll, defendant.
Thomas E. Brown, (see above), for Robert M.
Snyder, Warden respondent.
Thomas E. Brown, (see above), for Attorney
General of the State of Delaware, respondent.
SLEET, J.

### MEMORANDUM AND ORDER

*1 Following a jury trial in the Delaware Superior
Court, James Arthur Biggins was convicted of
unlawful sexual intercourse, assault, and unlawful
imprisonment. He was sentenced to thirty years in
prison, and is incarcerated at the Delaware
Correctional Center in Smyrna, Delaware. Biggins
has filed with the court a petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254. For
the following reasons, the court will deny Biggins'
petition.

### I. BACKGROUND

In September 1996, James Biggins shared an
apartment in Milton, Delaware, with Lynn Rios, a
woman with whom he was romantically involved.
On the night of September 23, 1996, another couple
visited Biggins and Rios at their apartment, and the
two couples drank beer and smoked crack cocaine.

According to Rios, after the other couple left about
midnight, Biggins forced her to have sexual
intercourse with him three times without her
consent, hit her in the head with a brick and a stick,
and shoved her face into a pile of dirt. Rios suffered
multiple bruises and a fractured nose. Rios also
alleged that Biggins would not let her leave the
apartment until the next morning, when she ran to a
nearby police station. Biggins acknowledged having
sexual intercourse with Rios, but denied forcing her
to have sex or striking her.

Based on these events, a Milton police officer
obtained a warrant for Biggins' arrest. Authorities in
Salisbury, Maryland, arrested Biggins on September
27, 1996, where he remained in custody until he
was extradited to Delaware on January 15, 1997. By
information dated March 17, 1997, the Delaware
Attorney General charged Biggins with three counts
of unlawful sexual intercourse, two counts of
possession of a deadly weapon during the
commission of a felony, assault, and unlawful
imprisonment.

On August 28, 1997, a jury in the Delaware
Superior Court found Biggins guilty of three counts
of unlawful sexual intercourse in the second degree,
one count of third degree assault, and one count of
unlawful imprisonment in the second degree. The
Superior Court sentenced Biggins on October 17,
1997, to thirty years in prison followed by
decreasing levels of supervision. On direct appeal,
Biggins urged appellate counsel to raise a host of
errors. Counsel, however, challenged only the
prosecutor's closing statements. (D.I. 37, Opening
Br. in No. 468, 1997.) The Delaware Supreme
Court concluded without explanation that "no plain
error occurred during the course of the State's
summation at trial," and affirmed Biggins'
convictions. *Biggins v. State*, No. 468, 1997, 1999
WL 1192332 (Del. Nov.24, 1999).

On February 24, 1999, while his direct appeal was
pending, Biggins filed in this court a petition for

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 2

Not Reported in F.Supp.2d, 2002 WL 31094810 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

federal habeas corpus relief. The respondents filed an answer, asking the court to dismiss the petition for failure to exhaust state court remedies. In the meantime, after his direct appeal concluded, Biggins pursued state court remedies by filing a motion for postconviction relief pursuant to Rule 61 of the Superior Court Rules of Criminal Procedure. In denying Biggins' Rule 61 motion, the Superior Court ruled that each of his claims, except his claims of ineffective assistance of counsel, was procedurally barred. *Biggins v. State,* Cr.A. No. S97-01-0376 (Del.Super.Ct. Feb. 25, 2000). The Superior Court also ruled that Biggins' claims of ineffective assistance consisted of a list of twenty-eight conclusory allegations that did not warrant relief. The Delaware Supreme Court agreed and affirmed the denial of postconviction relief. *Biggins v. State,* No. 118, 2000, 2000 WL 1504868 (Del. Sept.26, 2000). On November 16, 2000, Biggins filed in the Superior Court a motion for judgment of acquittal or new trial, which the Superior Court treated as a second Rule 61 motion. The Superior Court denied the motion on the ground that each of Biggins' claims was procedurally barred, and the Delaware Supreme Court affirmed. *Biggins v. State,* No. 17, 2001, 2001 WL 760859 (Del. May 18, 2001).

*2 At the conclusion of Biggins' state court proceedings, this court ordered supplemental briefing because it appeared that dismissal for failure to exhaust was no longer appropriate. As instructed, the respondents filed a supplemental answer on March 14, 2002, in which they argue that the claims raised in Biggins' original petition are procedurally barred. Biggins in turn filed a " Supplemental Brief," (D.I.43), in which he raises many claims not presented in his original petition. [FN1]

> FN1. In a letter dated April 25, 2002, Biggins asks the court to review this matter based on his supplemental brief, which the court treats as an amended petition. Although Biggins did not request leave to raise these new claims in an amended petition, the court is reluctant to refuse to consider them. If the court had dismissed

Biggins' original petition without prejudice for failure to exhaust, which apparently would have been appropriate in 1999, he could have raised his old and new claims in a subsequent petition timely filed after exhausting state court remedies. *See Christy v. Horn,* 115 F.3d 201, 208 (3d Cir.1997). It would be unfairly prejudicial not to consider each of his claims, both old and new, in light of the severe restrictions on filing second or successive habeas petitions. *See* 28 U.S.C. § 2244(b). While the court disfavors Biggins' failure to comply with applicable rules, the court will assess each of his claims, as articulated in his supplemental brief, without requiring any further responses. For purposes of the current analysis, the court will refer to Biggins' supplemental brief as his amended petition.

## II. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Pursuant to the federal habeas statute:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Grounded on principles of comity, the requirement of exhaustion of state court remedies ensures that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001).

To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Although a state prisoner is not required to "invoke extraordinary remedies," he must fairly present each of his claims to the state courts. *Boerckel,* 526 U.S. at 845, 848. A claim raised in a federal habeas petition has been fairly presented if it is "the substantial equivalent of that presented to the state courts" and if the state court has "available to it the same method of legal analysis as that to be employed in federal court." *Werts,* 228 F.3d at 192 (quoting *Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997)). Generally, federal courts will dismiss without prejudice claims that have not been fairly presented to the state courts, thereby allowing petitioners to exhaust their claims. *Lines v. Larkins,* 208 F.3d 153, 159-60 (3d Cir.2000), *cert. denied,* 531 U.S. 1082, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001).

Where a state court refuses to consider a petitioner's claims because he failed to comply with an independent and adequate state procedural rule, his claims are considered exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Werts,* 228 F.3d at 192. Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lines,* 208 F.3d at 160.

**\*3** In order to demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner may establish cause, for example, by showing that the factual or legal basis for a claim was not reasonably available or that government officials interfered in a manner that made compliance impracticable. *Werts,* 228 F.3d at 193. Additionally, ineffective assistance of counsel constitutes cause, but only if it is an independent constitutional violation. *See Coleman,* 501 U.S. at 755. In addition to cause, a petitioner must establish

actual prejudice, which requires him to show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray,* 477 U.S. at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). The miscarriage of justice exception applies only in extraordinary cases " where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). To establish actual innocence, a petitioner must satisfy the "extremely high burden" of showing that it is more likely than not that no reasonable juror would have convicted him. *Sweger v. Chesney,* 294 F.3d 506, 522-23 (3d Cir.2002) (citing *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). "New reliable evidence is almost always required to show actual innocence." *Sweger,* 294 F.3d at 523.

### B. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") mandates the following standards of review:
An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 4

Not Reported in F.Supp.2d, 2002 WL 31094810 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

28 U.S.C. § 2254(d). A federal court may issue a writ of habeas corpus under § 2254(d)(1) only if it finds that the state court decision on the merits of a claim either (1) was contrary to clearly established federal law, or (2) involved an unreasonable application of clearly established federal law. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

**\*4** Specifically, a federal court may grant the writ under the "contrary to" clause only "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 412-13. The court "must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Werts,* 228 F.3d at 197 (citing *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 888 (3d Cir.1999). In order to satisfy the "contrary to" clause, the petitioner must demonstrate "that Supreme Court precedent **requires** the contrary outcome." *Matteo,* 171 F.3d at 888 (emphasis added).

If the petitioner fails to satisfy the "contrary to" clause, the court must determine whether the state court decision was based on an unreasonable application of Supreme Court precedent. *Id.* Under the "unreasonable application" clause, the court " may grant the writ if the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413. In other words, a federal court should not grant the petition under this clause "unless the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Matteo,* 171 F.3d at 890.

Respecting a state court's determinations of fact, a federal habeas court must presume that they are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.* The presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v.*

*Vaughn,* 209 F.3d 280, 286 (3d Cir.2000), *cert. denied,* 531 U.S. 1084, 121 S.Ct. 789, 148 L.Ed.2d 685 (2001).

### III. DISCUSSION

In his amended petition, Biggins raises the following claims for relief:
(1) While in custody in Maryland awaiting extradition to Delaware, he was denied the procedural safeguards provided by the Interstate Agreement on Detainers ("IAD"), his right to a speedy trial, and his right to counsel. (D.I. 43 at 15-22.)
(2) He did not voluntarily waive his right to be charged by indictment, and was thus unlawfully prosecuted by information. (*Id.* at 22-24, 26.)
(3) The Superior Court committed "plain error" in instructing the jury. (*Id.* at 25, 27-28.)
(4) The prosecutor engaged in misconduct and vindictive prosecution by allowing witnesses to lie, vouching for the state's witnesses, withholding evidence of Rios' mental illness and her criminal record, and making unspecified remarks in closing statements. (*Id.* at 28-41.)
(5) The evidentiary chain of custody was broken when samples taken from his body were left overnight at the hospital. (*Id.* at 42-43.)
**\*5** (6) The warrant that authorized the taking of samples from his body was unlawfully executed. (*Id.* at 44-45.)
(7) Trial counsel rendered ineffective assistance in a variety of ways in the pretrial stage and throughout trial. (*Id.* at 47-54.)
(8) Appellate counsel rendered ineffective assistance by failing to raise meritorious issues on direct appeal. (*Id.* at 55.)
(9) Certain items of evidence were never "tested" and were unfairly prejudicial. (*Id.* at 56.)
(10) All of the state's witnesses committed perjury. ( *Id.* at 57-58.)
(11) He was tried before an all-white jury in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). (*Id.* at 58.)

Before addressing any of Biggins' claims, the court must determine which are exhausted, thereby

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5

Not Reported in F.Supp.2d, 2002 WL 31094810 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

allowing the court to review them on the merits, and which are procedurally barred from federal habeas review. The court first examines the merits of Biggins' exhausted claims.

## A. Prosecutor's Closing Statements

On direct appeal, Biggins raised a single claim:
The trial court committed plain error by permitting the prosecutor to make improper remarks to the jury during closing argument by interjecting race, repeatedly referring to the complaining witness as ' the victim,' arousing the jurors' sympathy for the complaining witness, and implying the defendant had the burden of proving why the complaining witness would lie.

(D.I. 37, Appellant's Opening Br. in No. 468, 1997.) The Delaware Supreme Court ruled without elaboration that "no plain error occurred during the course of the State's summation at trial." *Biggins,* 1999 WL 1192332 at ----1. Because Biggins exhausted this claim by presenting it on direct appeal, the court may review it on the merits.

Unfortunately, Biggins has failed to inform the court of the basis for this claim. He presents his " discussion" of this claim in two brief sentences: " Before this Court is already, [sic] the prosecution [sic] closing argument statements [sic]. Therefore, the petitioner feel's [sic] it needs no better elaboration." (D.I. 43 at 28.) He refers to nothing already before the court, however, that discusses why he should be granted federal habeas relief based on the prosecutor's closing statements. He identifies no specific remarks that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). He provides no facts which would permit the court to "weigh the prosecutor's conduct, the effect of the curative instructions and the strength of the evidence." *Darden v. Wainwright,* 477 U.S. 168, 182, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986).

In other words, Biggins has failed completely to " set forth in summary form **the facts** supporting" his

challenge to the prosecutor's closing statement. Rule 2(c) of the Rules Governing Section 2254 Cases (emphasis added). His "bald assertions and conclusory allegations" are insufficient to permit this court to assess this claim. *Mayberry v. Petsock,* 821 F.2d 179, 185 (3d Cir.1987). To the extent that Biggins may be attempting to rely on the arguments he raised on direct appeal, the court remains uninformed. Under the AEDPA's standards of review, the court may grant federal habeas relief only if the Delaware Supreme Court's decision either is contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). Biggins makes no attempt to explain how he has satisfied this standard. [FN2]

> FN2. Notwithstanding, the court has reviewed the transcript of the prosecutor's closing statements. (D.I. 37, App. to Appellant's Opening Br. in No. 468, 1997, at A8-A49.) The court can find no reason to conclude that the prosecutor's closing statements deprived Biggins of any constitutional right.

*6 In short, the court can find no merit to Biggins' conclusory allegations respecting the prosecutor's closing statements. Accordingly, his request for federal habeas relief as to this claim will be denied.

## B. Ineffective Assistance of Trial Counsel

In his amended petition, Biggins alleges a host of errors by trial counsel that deprived him of his Sixth Amendment right to effective assistance of counsel. These alleged errors are that counsel failed to: (1) meet and communicate with Biggins; (2) investigate potential witnesses; (3) obtain an affidavit from his employer establishing that he worked on the day of the incidents; (4) file adequate motions to dismiss and to suppress; and (5) challenge the DNA report, conduct DNA research, and request funds to obtain a DNA expert. A review of the record confirms that Biggins exhausted these claims by presenting them, albeit in a conclusory fashion, to the state courts in his postconviction proceedings. [FN3] On postconviction appeal, the Delaware Supreme Court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 31094810 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

stated without elaboration that Biggins had "failed to demonstrate how he was prejudiced by any of trial counsel's alleged errors." *Biggins,* 2000 WL 1504868 at ----2.

> FN3. In Delaware, claims of ineffective assistance are properly raised for the first time in postconviction proceedings, not on direct appeal. *See MacDonald v. State,* 778 A.2d 1064, 1071 (Del.2001); *Flamer v. State,* 585 A.2d 736, 753 (Del.1990).

Because the state courts rejected Biggins' claims of ineffective assistance of trial counsel on their merits, this court's review is confined to determining whether the state courts' decision either was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1); *Williams,* 529 U.S. at 412. The clearly established federal law governing claims of ineffective assistance is the familiar two-prong test of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Williams,* 529 U.S. at 391. Under *Strickland,* a defendant claiming ineffective assistance of counsel must show (1) that counsel's performance was deficient, and (2) actual prejudice, *i.e* ., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 686, 694. With these standards in mind, the court considers Biggins' assertions of ineffective assistance of trial counsel.

**1. Failure to meet and communicate with Biggins**

Biggins' first complaint is that trial counsel failed to meet and communicate with him. Unfortunately, the record is far from clear how many times counsel met or communicated with Biggins. Biggins acknowledges that he first met with counsel in the middle of January 1997, then asserts that counsel " was not seen or heard from until about April 22, 1997." (D.I. 43 at 17.) He contradicts this assertion, however, by acknowledging that he received a letter from counsel dated March 31, 1997. (*Id.* at 52.) He also describes a visit that took place on or about

April 21, 1997. (*Id.* at 51.) He also acknowledges seeing counsel "on five other occassions [sic]," and once on September 24, 1997. (*Id.* at 51.)

*7 Based on Biggins' submissions, the court cannot determine with any level of certainty just how often counsel communicated with or visited Biggins. Such a determination, however, is unnecessary. In order to establish a Sixth Amendment violation, Biggins must demonstrate that he was prejudiced by counsel's failure to communicate with or visit him more frequently. *See Strickland,* 466 U.S. at 694. Noticeably absent from Biggins' lengthy submissions is an explanation for how the outcome of the proceedings would have been different if counsel had communicated with or visited him more often. Without such a showing, Biggins' claim of ineffective assistance, based on trial counsel's infrequent communications, does not provide a basis for granting federal habeas relief.

**2. Failure to investigate potential witnesses**

Biggins next alleges that trial counsel rendered ineffective assistance by failing to investigate several potential witnesses. These witnesses were: (1) William and Tracey Wiley; (2) James Welu, the landlord and owner of the building in which Biggins and Rios lived; (3) Sergeant Williams of the detention center in Salisbury, Maryland, where Biggins was held pending extradition to Delaware; (4) Dr. Mike Wise, a physician who treated Rios for mental health issues; and (5) Michelle Chandler and Keith Parker, the other couple who visited Biggins and Rios at their apartment on September 23, 1996.

Biggins first asserts that counsel engaged in ineffective assistance by failing to call William and Tracey Wiley as character witnesses. Biggins states that William could have testified respecting Rios' unusual actions and conduct, and could have described a prior incident where Rios allegedly destroyed the couple's apartment when Biggins refused to purchase crack for her. Biggins also contends that William could have testified how Rios had previously filed a false report against Biggins for assaulting her. Biggins makes no allegation that William was present or had any knowledge

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

concerning the events of September 23, 1996. He does not offer any proposed testimony from Tracey.

Whether William's proposed testimony would have had any effect on the outcome of Biggins' trial is doubtful. If Rios had been presented to the jury as a model citizen, perhaps William's character testimony would have been important. The jury, however, knew that Rios used crack, that her five children had been removed from her home by the state, that she had a criminal history, and that she had previously testified falsely under oath. In light of the information already before the jury, the court cannot conclude that Biggins suffered any prejudice due to counsel's failure to call William to testify as to Rios' conduct.

Biggins next complains about counsel's failure to subpoena James Welu, the landlord and owner of the building in which Biggins and Rios lived. According to Biggins, Welu would have testified as to the incident where Rios allegedly destroyed the apartment, and that he "barred" Rios from the premises. Again, in light of the damaging testimony respecting Rios' character already before the jury, the court cannot find a reasonable probability that Welu's testimony would have had any effect on the outcome of Biggins' trial.

**\*8** Next, Biggins claims that counsel should have subpoenaed Sergeant Williams from the Maryland detention center to testify. Discerning Williams' precise proposed testimony is difficult from Biggins' submissions. Biggins alleges that while he was in custody at the detention center in Maryland waiting extradition to Delaware, Rios "did appear at his place of work on Nov. 17, 1996, under false pretense, alleging that [Biggins] was in possession [sic] her disability check cashing card," that she " probe[d] through [his] belongings," and asked questions regarding Biggins' condition. (D.I. 43 at 51-52.) Biggins fails entirely to describe Williams' proposed testimony, explain how Williams is related to Biggins' "place of work," or how Williams' testimony could have any effect on the outcome of his trial.

Biggins also complains of counsel's failure to subpoena Dr. Mike Wise, who Biggins describes as

"Mrs. Rios [sic] mental health treating physician." ( *Id.* at 52.) Biggins asserts that Dr. Wise could have testified as to the nature of the relationship between Biggins and Rios, that Rios exhibited "no signs of abuse mentally or physically associated in the relationship," and that Rios was "viewed as being in her best mental state in treatment since meeting" Biggins. (*Id.*) Biggins has not addressed whether Dr. Wise's testimony would have been privileged and thus inadmissible. *See* Del.R.Evid. 503(b). [FN4] Even if Dr. Wise's testimony were admissible, the court cannot find that it would have had any effect on the outcome of Biggins' trial. Indeed, it seems that Dr. Wise's proposed testimony that Rios "was in her best mental state since meeting" Biggins could have undermined his desire to discredit Rios' character.

> FN4. General rule of privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of the patient's physical, mental or emotional condition, including alcohol or drug addiction, among the patient, the patient's mental health provider, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the mental health provider, physician or psychotherapist, including members of the patient's family.

Finally, Biggins names Michelle Chandler and Keith Parker, the other couple who visited Biggins and Rios on September 23, 1996, as witnesses that counsel should have investigated. Biggins himself notes, however, that Chandler and Parker testified at trial that they did not witness Biggins abuse Rios on September 23, 1996. (D.I. 43 at 52.) Biggins proposes absolutely no other testimony that Chandler and Parker could have provided if counsel had investigated them more fully.

For these reasons, the court finds that Biggins' allegations respecting trial counsel's failure to interview, investigate, or call potential witnesses fail to satisfy the *Strickland* standard. Accordingly,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 8

Not Reported in F.Supp.2d, 2002 WL 31094810 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

the court will deny Biggins' request for federal habeas relief as to these claims.

### 3. Failure to obtain affidavit from employer

At trial, defense counsel asked Rios on cross-examination whether Biggins was employed at the time of the incident. She answered, "No, I don't believe so." Counsel then asked whether Biggins worked the day of the incident, and Rios stated, "He was supposed to be doing some work for the landlord in the apartment upstairs." Finally, counsel asked whether Biggins was employed by Atlantic Screen Company at the time, and Rios answered, "Not to my knowledge ." (D.I.45, Ex. H-32.) Biggins, on the other hand, testified that he had just obtained employment at Atlantic Screening in Milton, and that he had worked from 10:00 a.m. until about 5:30 p.m. on the day of the incident. Biggins now asserts that trial counsel rendered ineffective assistance by failing to obtain an affidavit from Atlantic Screening to verify his employment.

*9 While an affidavit would have strengthened Biggins' testimony and impeached Rios' testimony on this particular point, the court cannot conclude that Biggins was prejudiced by counsel's failure to obtain such an affidavit. It is undisputed that the events leading to Biggins' convictions occurred after Chandler and Parker left on the night of September 23, 1996. According to Biggins, the other couple arrived at about 8:00 p.m., and left between 12:30 a.m. and 1:00 a.m. Rios testified that Chandler and Parker arrived at about 9:00 p.m. or 10:00 p.m., and left about midnight. Biggins has failed to explain how an affidavit demonstrating that he was at work until 5:30 p.m. would have had any effect on the outcome of his trial, when the events leading to his convictions occurred several hours later. For these reasons, Biggins' claim of ineffective assistance, based on counsel's failure to obtain an affidavit verifying employment, does not provide a basis for granting federal habeas relief.

### 4. Failure to challenge DNA report

Biggins' next complaint respecting trial counsel is his failure to challenge the DNA report, conduct DNA research, and request funds to obtain a DNA expert. It appears that this claim is related to the May 29, 1997 FBI Laboratory report, a copy of which Biggins has submitted to the court. (D.I.46, Ex. L-4A.)

The FBI laboratory report indicates that several samples were taken from Rios, including vaginal swabs and pubic hairs. The report also indicates that pubic hairs and blood samples were taken from Biggins. According to the report, the DNA profile from Biggins' blood sample matched a DNA profile found in two of the vaginal swabs. The report also indicates that a pubic hair found in Rios' sample was consistent with Biggins' pubic hair. Other results from the examination were inconclusive.

The court cannot perceive how this laboratory report had any real effect on the outcome of Biggins' trial. Biggins testified at trial that he engaged in vaginal intercourse with Rios more than one time on the night in question. The FBI laboratory report supports Biggins' own testimony. Biggins has failed to explain what counsel would have discovered if he had expended more time and resources on developing a "DNA argument," or why the report had an effect on the outcome of the trial. Accordingly, Biggins' request for federal habeas relief as to this claim will be denied.

### 5. Failure to file adequate pretrial motions

Biggins next challenges the pretrial motions to dismiss and to suppress that trial counsel submitted on his behalf. While he acknowledges that counsel filed both a motion to dismiss and a motion to suppress, Biggins contends that these motions were inadequate.

Biggins' motion to dismiss was based on an alleged violation of his right to be brought to trial within 120 days of his arrival back in Delaware, as provided by the IAD, 11 Del.Code Ann., tit. 11, § 2543(c). (D.I.44, Ex. A-17.) After a hearing, the Superior Court found that the 120-day period of § 2543(c) did not apply, and denied the motion to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2002 WL 31094810 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

dismiss.

**\*10** Although Biggins disagrees with the Superior Court's decision, he offers nothing that counsel could have argued that might have caused the Superior Court to grant the motion. The statute itself states that the 120-day limit of § 2543(c) applies where a detainer has been lodged against a prisoner "who is serving a term of imprisonment in any party state." 11 Del.Code Ann., tit. 11, § 2543(a). Here, Biggins was not serving a term of imprisonment in Maryland, [FN5] nor did the Delaware authorities lodge a detainer against him. It is plain from the record that Biggins was arrested in Maryland as a fugitive based on the pending Delaware charges. Under these circumstances, the court cannot conceive what argument counsel could have presented that would have induced the Superior Court to grant the motion to dismiss.

> FN5. The court acknowledges Biggins' argument that he had an outstanding violation of probation charge against him in Maryland, and that Maryland thus had authority to hold him in custody regardless of the pending Delaware charges. Even if this is true, Biggins has failed to offer any evidence that he was in custody based on any Maryland sentence.

Biggins also faults counsel's motion to suppress the results of the FBI laboratory report. (D.I. 46, Ex. L-2A and L-3A.) Apparently, Biggins asked counsel to move to suppress the report based on the evidentiary chain of custody, as well as the alleged unlawful execution of the warrant authorizing the taking of samples from his body. Instead, in the motion to suppress, counsel argued that the FBI laboratory report was irrelevant, inconsistent, and inconclusive. (*Id.*)

The court need not determine whether counsel's motion to suppress was inadequate, as Biggins alleges, or whether it would have been granted if counsel had raised Biggins' proposed arguments. As explained above, whether Biggins and Rios engaged in sexual intercourse was not an issue at trial-Biggins himself testified that he engaged in vaginal intercourse with Rios more than once on the night of September 23, 1996. Even if the FBI report had been suppressed, the undisputed fact remained that Biggins engaged in intercourse with Rios. For this reason, the court cannot find that Biggins was prejudiced by counsel's failure to convince the Superior Court to suppress the FBI laboratory report.

### C. Ineffective Assistance of Appellate Counsel

On direct appeal, Biggins was originally represented by his trial attorney, Steve Callaway, who filed a "no merits" brief on appeal and moved to withdraw. The Delaware Supreme Court allowed Callaway to withdraw, but found that Biggins' appeal was not "totally devoid of at least arguably appealable issues," and appointed Rosemary Betts Beauregard to represent him. *Biggins,* No. 468, 1997 (Del. Dec. 9, 1998). Beauregard and Biggins discussed, but apparently did not agree upon, the issues to be raised on appeal. Before she completed his opening brief, however, Beauregard was appointed to the Court of Common Pleas for Sussex County. The Superior Court then appointed A. Dean Betts, Jr., to represent Biggins on appeal.

Due to his heavy caseload, Betts hired attorney John G. Russell to prepare Biggins' opening brief and appendix. Russell concluded that the only meritorious issue to raise on direct appeal was the one challenging the prosecutor's closing statements, as described above. In reaching this decision, Russell considered several issues, including the ones Biggins wanted to pursue. (D.I. 44, Letter of June 23, 1999, from Russell to Betts.) Russell specifically rejected Biggins' IAD and speedy trial claims as "weak." He also considered Biggins' claim based on the waiver of indictment, but noted that a waiver of indictment form apparently signed by Biggins was contained in the record. Russell noted that Biggins could raise claims of ineffective assistance of trial counsel in postconviction proceedings following direct appeal. Betts then submitted Biggins' opening brief raising only the claim challenging the prosecutor's closing statements.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 10

Not Reported in F.Supp.2d, 2002 WL 31094810 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**\*11** Biggins now alleges that each of his three appellate attorneys rendered ineffective assistance by failing to raise meritorious issues on direct appeal. He properly raised this claim to the state courts in his postconviction proceedings, thereby satisfying the exhaustion requirement. Because the state courts rejected this claim on the merits, this court's review of this claim is again limited to determining whether the state courts' decision either was contrary to, or involved an unreasonable application of, the *Strickland* standard. 28 U.S.C. § 2254(d)(1). In rejecting Biggins' claim, the Delaware Supreme Court correctly articulated the *Strickland* standard, and stated without elaboration that Biggins had "failed to demonstrate that appellate counsel's decision to raise only the issue of the State's closing argument on appeal was professionally unreasonable." *Biggins,* 2000 WL 1504868 at ----2.

Discerning the precise bases for Biggins' claims is problematic. At one point, he states that each appellate attorney was hindered by a conflict of interest. (D.I. 43 at 55.) He correctly cites *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), for the proposition that a defendant can establish a Sixth Amendment violation by showing that defense counsel was actively representing conflicting interests, and that the conflict had an adverse effect on counsel's performance. *Id.* at 350. He fails, however, to describe any kind of conflict whatsoever, or to explain how any attorney's performance was actually hindered due to a conflict.

Otherwise, the factual basis of Biggins' claims is unclear. Apparently, he believes that Callaway rendered ineffective assistance by filing a "no merits " brief to the Delaware Supreme Court. He also suggests that Beauregard rendered ineffective assistance because she lacked familiarity with the facts of his case and had not formed any issues for appeal. He complains that Betts rendered ineffective assistance by allowing Russell to form the issues for appeal, and by refusing to present each and every one of Biggins' proposed claims.

To the extent that Biggins complains of ineffective assistance from Callaway and Beauregard on direct appeal, his claim lacks any arguable legal merit.

Neither Callaway nor Beauregard prepared Biggins' opening brief. The record is clear that Callaway and Beauregard were relieved of their obligations to represent Biggins long before his opening brief was filed. Obviously, an attorney who did not frame the issues for appeal cannot render ineffective assistance by failing to raise meritorious claims.

To the extent that Biggins challenges Betts' decision to raise only one issue on appeal, this claim does not provide a basis for finding that Biggins' Sixth Amendment right to effective assistance of counsel was violated. The Delaware Supreme Court concluded that Biggins had failed to demonstrate that Betts' decision was professionally unreasonable. *Biggins,* 2000 WL 1504868 at ----2. Biggins in turn has failed to demonstrate to this court that the state court's decision either was contrary to, or involved an unreasonable application of, the *Strickland* standard.

**\*12** It is well established that the Sixth Amendment does not encompass the right of a criminal defendant "to compel appointed counsel to press nonfrivolous points ... if counsel, as a matter of professional judgment, decides not to press those points." *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). As the United States Supreme Court has acknowledged, "[a] brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." *Id.* at 753. In general, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Ellis v. Hargett,* --- F.3d ----, No. 00-6358, 2002 WL 2005892, \*4 (10th Cir. Sept.3, 2002).

Here, the record demonstrates that Russell considered each of Biggins' issues, and explained to Betts why those issues should not be pursued on direct appeal. Betts apparently agreed with Russell, and submitted Biggins' opening brief raising only the issue respecting the prosecutor's closing statements. Biggins has provided the court with no evidence, nor is it apparent from the record, that Betts' performance was deficient in this regard. *See Eagle v. Linahan,* 279 F.3d 926, 937 (11th Cir.2001). Under these circumstances, the court

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 11

Not Reported in F.Supp.2d, 2002 WL 31094810 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

cannot conclude that the Delaware Supreme Court's rejection of this claim is contrary to, or involved an unreasonable application of, federal law.

For these reasons, the court will deny Biggins' request for federal habeas relief based on his claim of ineffective assistance of appellate counsel.

### D. Procedurally Barred Claims

A review of the state court records confirms that Biggins presented each of his remaining claims to the Superior Court in his motion for postconviction relief, albeit in a cursory fashion. The Superior Court ruled that these remaining claims were procedurally barred by Rule 61(i)(3) [FN6] because Biggins did not present them on direct appeal. On postconviction appeal, the Delaware Supreme Court agreed and affirmed. *Biggins,* 2000 WL 1504868 at ----2. The state courts' decision not to review these claims rests solely on Rule 61(i)(3), which is an independent and adequate state procedural ground. *See Gattis v. Snyder,* 46 F.Supp.2d 344, 367 (D.Del.1999), *aff'd,* 278 F.3d 222 (3d Cir.2002). Accordingly, this court may not consider the merits of Biggins' remaining procedurally defaulted claims unless he demonstrates cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750.

> FN6. Procedural Default. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows
> (A) Cause for relief from the procedural default and
> (B) Prejudice from violation of the movant's rights.
> Super.Ct.R.Crim.P. 61(i)(3).

Biggins alleges that his procedural default was due to the ineffective assistance of appellate counsel by refusing to raise these claims on direct appeal. Ineffective assistance of counsel may constitute cause for a procedural default, but only if counsel's

deficiencies rise to the level of an independent Sixth Amendment violation. *See Coleman,* 501 U.S. at 755. For the reasons previously described, the court has concluded that Biggins' allegations of ineffective assistance of appellate counsel do not give rise to a violation of the Sixth Amendment. [FN7] It follows that these allegations are insufficient to establish cause for his procedural defaults. In addition, Biggins does not allege that he is actually innocent of the crimes for which he was convicted.

> FN7. *See supra,* Part III.C.

**\*13** In short, Biggins' remaining claims are procedurally defaulted because he failed to raise them on direct appeal. He has not established cause for his procedural default, nor has he submitted new reliable evidence demonstrating that he is actually innocent. Accordingly, the court concludes that his remaining claims are procedurally barred from federal habeas review.

### IV. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, a petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

Here, the court has concluded that Biggins' exhausted claims lack merit, and that his remaining claims are procedurally barred. The court is persuaded that reasonable jurists would not find these conclusions debatable or wrong. Biggins has, therefore, failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 12

Not Reported in F.Supp.2d, 2002 WL 31094810 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

### V. CONCLUSION

For the foregoing reasons, IT IS HEREBY
ORDERED THAT:
(1) James Arthur Biggins' petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254 (D.I.2),
as amended (D.I.43), is DENIED.
(2) The court declines to issue a certificate of
appealability for failure to satisfy the standard set
forth in 28 U.S.C. § 2253(c)(2).


IT IS SO ORDERED.

D.Del.,2002.
Biggins v. Carroll
Not Reported in F.Supp.2d, 2002 WL 31094810
(D.Del.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

The undersigned, being a member of the Bar of the United States District Court for the District of Delaware, hereby certifies that on January 17, 2006,

1. He caused two copies of the attached document (Answer) to be deposited in the United States Mail, first class postage prepaid, addressed to the following non-registered participant:

Jeffrey Simms
No. 198625
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, DE 19977

2. He electronically filed the Answer with the Clerk of the District Court using CM/ECF.

/s/ **LOREN C. MEYERS**
Loren C. Meyers
Chief of Appeals Division
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar ID 2210
loren.meyers@state.de.us